IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**APRIL HUBBARD**                                                                          **PLAINTIFF**

**V.**                                                                      **CAUSE NO. 3:10-CV-00308-CWR-LRA**

**YAZOO CITY, MISSISSIPPI, D/B/A/**
**YAZOO CITY POLICE DEPARTMENT**                                         **DEFENDANT**

## ORDER GRANTING SUMMARY JUDGMENT

The above-styled matter is before the Court on the defendant's Motion for Summary Judgment [Docket No. 20]. The Court has reviewed the parties' briefs and considered the arguments offered at the pretrial conference on June 13, 2011, and, after due consideration, has concluded that the motion should be granted.

## FACTS

In October 2008, the Yazoo City Police Department hired April Hubbard. Exhibit A to Defendant's Motion for Summary Judgment [Docket No. 20-1] at 3 (Deposition of April Hubbard at 20). In order to gain admission to the Mississippi Law Enforcement Training Academy, though, the Department required her to pass a rigorous physical fitness test, as it requires with each applicant. Hubbard Depo. at 36-37. Candidates are afforded just two opportunities to pass the test, and in November 2008, Hubbard failed her first attempt. Hubbard Depo. at 37.

Hubbard continued training for the test, but in December 2008, she experienced heart "fluttering" and "felt like [she] needed to see a doctor." Hubbard Depo. at 38. Her physician "ordered [her] . . . to go see a cardiologist before [she] continued any vigorous activities,"

1

Hubbard Depo. at 38, and in January 2009, a cardiologist examined Hubbard and cleared her to participate in physical activities. Hubbard Depo. at 44.

But about that time, a job vacancy arose in the office of the city's municipal court clerk, and Hubbard's supervisor at the police department encouraged her to apply. Hubbard Depo. at 56. She was hired by the clerk's office as a deputy clerk and was scheduled to start on January 13, 2009. Hubbard Depo. at 63. Her supervisor was the clerk, Barbara Edwards. Defendant's Memorandum [Docket No. 21] at 4; Plaintiff's Memorandum in Support of Response [Docket No. 25] at 2. However, Hubbard did not report that day[1] because she "had a doctor's appointment." Hubbard Depo. at 63.

On Sunday, February 1, 2009, Hubbard telephoned Edwards to aver that she would not report to work the next day because she had undergone surgery to remove her gallbladder. Hubbard Depo. at 66. Two days earlier, Hubbard had visited a hospital emergency room and soon thereafter was admitted to St. Dominic's Hospital in Jackson, where the surgery took place. Hubbard Depo. at 67. Hubbard's "doctor kept [her] off [work] for a couple more days" beyond Monday, February 2, and instructed her not to return to work until Monday, February 9, which she did. Hubbard Depo. at 68-69.

At the time these events transpired, Hubbard resided in Clinton, which is located in Hinds County. Hubbard Depo. at 67. According to Hubbard, Edwards knew that she lived outside Yazoo County, Hubbard Depo. at 68, despite the existence of a Yazoo City ordinance requiring that city employees live within Yazoo County. Exhibit 6 to Def. Mot. [Docket No. 20-7]; Exhibit

---

[1] According to Hubbard, she informed her new employers of the January 13 appointment on "[t]he day that [she] was told that [she] was hired . . . ." Hubbard Depo. at 65.

7 to Def. Mot. [Docket No. 20-8] at 2.

When Hubbard returned to work on February 9, she was called in to meet with Police Chief Eric Snow and Edwards. Hubbard claims that Edwards said that "she needed a full-time worker." Hubbard Depo. at 69. When Hubbard "told her that [she] didn't know [she] was going to have to have emergency surgery, . . . [Edwards] said, 'Well, evidently you just have a condition that can't be helped.'" Hubbard Depo. at 69.

Hubbard claims that "Chief Snow asked me to either . . . resign or be terminated." Hubbard Depo. at 69. Hubbard chose the latter. Hubbard Depo. at 69-70. Within days of her dismissal, on February 13, 2009, Hubbard filed a charge of discrimination with the EEOC and asserted that she was "terminated for residing outside of Yazoo County." Exhibit A to Plaintiff's Response in Opposition [Docket No. 24-1] (EEOC Charge of Discrimination at 1). Her charge continues:

> When I confronted my supervisor that it was not against policy for me to reside outside of Yazoo County, my supervisor changed her reasoning that I would not get sick. Then when I explained to my supervisor that it was emergency surgery, my supervisor again changed her reasoning to say that I was terminated for performance issues. I believe that I was terminated because I am disabled or was perceived to be disabled under the ADA.

EEOC Charge of Discrimination at 1.

On March 26, 2010, Hubbard filed suit against Yazoo City, doing business as Yazoo City Police Department, in Hinds County Circuit Court. Hubbard brought two claims: first, that Yazoo City violated the Americans with Disabilities Act by discriminating against her on the basis of a perceived disability, and second, that Yazoo City interfered with her rights under the Employment Retirement and Income Security Act. Complaint [Docket No. 2-1]. Yazoo City

removed the case [Docket No. 1] to the United States District Court for the Southern District of Mississippi on May 26, 2010.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for that disposition. Summary judgment is appropriate only if "particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), "show[ ] that there is no genuine dispute as to any material fact . . . ." Fed. R. Civ. P. 56(a).

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it is one which might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id*. Likewise, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). And "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Davis v. Louisville Mun. Sch. Dist.*, 2010 WL 290956, *2 (N.D. Miss. 2010) (*quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

The jury has the ultimate responsibility to assess the probative value of the evidence. As a consequence, a court must step back and refrain from making credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005). This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989). But where the relevant facts are not in dispute, summary disposition is appropriate. *See, e.g., Smith v. Brookhaven Sch. Dist.*, 2011 WL 2436146, *2 (S.D. Miss. June 14, 2011).

## ANALYSIS

With regard to Hubbard's ERISA claim, Yazoo City argues that is a municipality, and that because "Subchapter I of ERISA expressly provides that 'the provisions of this subchapter shall not apply to any employee benefit plan if such plan is a government plan,'" Def. Memo at 14 (quoting 29 U.S.C. § 1003(b)(1)), it is entitled to judgment as a matter of law. Hubbard explicitly concedes this point. Hubbard Memo at 5 ("Plaintiff concedes that her ERISA claim should be dismissed as it is arguable that municipalities are not covered under ERISA."). Therefore, summary judgment on the ERISA claim is appropriate.

The parties share less common ground on the ADA claim.

According to Yazoo City, Hubbard cannot satisfy the *McDonnell Douglas* burden-shifting analysis[2] used to evaluate workplace discrimination claims. Specifically, Yazoo City

---

[2] The Fifth Circuit employs the *McDonnell Douglas* burden-shifting framework "[w]hen a plaintiff can offer only circumstantial evidence to prove a violation of the ADA . . . ." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Hubbard does not contend that this test is inappropriate in the case at bar. *See* Pl. Memo at 3.

5

argues that Hubbard cannot establish a *prima facie* case of workplace discrimination because "(1) she admits she is not disabled, and has no evidence that the City regarded her as having an ADA-covered impairment; (2) she admits failing the City's residency requirement, and thus, is not qualified; and (3) she can point to no other non-disabled employee treated better under similar circumstances." Def. Memo at 7.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court unanimously established a three-step approach for evaluating workplace discrimination claims. *Id.* at 802. The Fifth Circuit has held that

> [u]nder this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced or treated less favorably than non-disabled employees.

*McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

If the plaintiff can satisfy that four-piece obligation, "the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the defendant does so, then the burden of proof finally "shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id.*

But in the case at bar, Hubbard cannot meet her burden under the fourth piece of the *prima facie* inquiry because she has produced no admissible evidence demonstrating that she was replaced or treated less favorably than non-disabled employees.

Alongside her Response to Yazoo City's Motion, Hubbard submitted the affidavit of Theodis Freeman, a former division chief of the Yazoo City Fire Department, *see* Exhibit D to

Plaintiff's Response [Docket No. 24-1] at 5 (Theodis Freeman Affidavit at 1), who claims that Yazoo City's former fire chief defied the ordinance requiring that city employees live in Yazoo County but was not fired for the affront. Also, according to Theodis Freeman, a police officer named Deevie Freeman moved to Madison County while serving in the Yazoo City Police Department, but he too did not suffer termination. In Hubbard's view, Yazoo City's insistence that it fired her because of her Hinds County residency falls flat in the face of such evidence.

Theodis Freeman's affidavit is the only evidence in the record supporting Hubbard's claim under the fourth element of the *prima facie* test. But for two reasons, the affidavit does not entitle Hubbard to proceed to trial.

First, Hubbard did not disclose Theodis Freeman as a potential witness prior to the submission of his affidavit. When called upon by this Court to explain that deficiency, Hubbard argued [Docket No. 30] that Freeman's affidavit was to be used solely for impeachment and, therefore, was exempted from the disclosure requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(1)(A)(I) (parties must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . unless the use would be solely for impeachment"). But a review of the record clearly refutes that claim. Aside from Freeman's affidavit, no record evidence supports the suggestion that Hubbard was replaced or treated less favorably than non-disabled employees; her case depended on her ability to rely on the affidavit's substance. Indeed, Hubbard herself argued in response to Yazoo City's motion for summary judgment that Freeman's affidavit "show[s] the fourth prong as she was replaced by a non-disabled female, and other employees of the Defendant lived outside of Yazoo County and were not terminated." Pl. Memo at 5 (citing Affidavit of Theodis Freeman).

7

But because Hubbard did not disclose Freeman as a potential witness to Yazoo City and could not articulate a compelling reason to allow her the use of that witness nevertheless, reliance on Freeman's affidavit is improper. Fed. R. Civ. P. 37(c)(1).

Even if Freeman had been disclosed as a witness pursuant to Rule 26, the Court still would be obligated to ignore its substance because its representations are purely conclusory in nature. In his affidavit, Freeman recounts two city employees who lived outside Yazoo County: Sidney Johnson, the fire chief of Yazoo City, and Deevie Freeman, formerly an officer in the Yazoo City Police Department. According to Theodis Freeman, Sidney Johnson lived in Jackson throughout his tenure as fire chief of Yazoo City. But in order to satisfy the fourth requirement of an ADA *prima facie* case, the non-disabled employee who was treated more favorably must be "similarly situated" to the plaintiff. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 622 (5th Cir. 1999). In the office of a court clerk, the position of deputy clerk is an important one, but no reasonable person would describe it as a situation that is similar to the chief of a fire department, and this Court would not so hold.

Moreover, it is clear that Theodis Freeman did not have a complete grasp of the circumstances surrounding Johnson's tenure with Yazoo City. The evidence submitted by Yazoo City demonstrates that "Johnson was never an employee of Yazoo City." Defendant's Memo in Support of Response to Motion for Summary Judgment [Docket No. 28] at 7. In fact, the City "took great care to retain Johnson only as a consultant with the fire department, not as an employee, so that he would not be subject to the residency requirement." *Id.* When Johnson and the City learned that the consultant arrangement was not appropriate under the rules of the Mississippi Public Employees Retirement System, Johnson resigned the consulting position. *Id*.

at 8.

That leaves only Theodis Freeman's statement about Deevie Freeman, which reads in whole: "Deevie Freeman, who worked as a police officer for Defendant, moved outside Yazoo County while working for Defendant. However, Deevie Freeman was not terminated for moving outside of Yazoo County. Mr. Freeman moved to Madison County, Mississippi." Theodis Freeman Affidavit at 1-2. But this evidence, in its current form, likewise is of no use to Hubbard because it is a purely conclusory statement, and a conclusory statement will not shield a plaintiff from the winds of a motion for summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195-96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence."). The affidavit is bereft of factual support for Theodis Freeman's conclusory statement that Deevie Freeman moved to Madison County. Simply saying it is not enough, notwithstanding that he makes the assertion in an affidavit. *Wilson v. West*, 962 F. Supp. 939, 950 (S.D. Miss. 1997) (citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3rd Cir. 1985)).

But even if he did have personal knowledge or factual support for his averment that Deevie Freeman lived in Madison County, Theodis Freeman still would have had to connect one final dot: the affidavit would have to show that Yazoo City, through its officials in charge, knew that Deevie Freeman lived in Madison County and that the City nevertheless did not take action against him. An affidavit containing these averments might provide an evidentiary basis for defeating the summary-judgment motion (if not for the aforementioned procedural flaw). At the summary-judgment stage, Rule 56 of the Federal Rules of Civil Procedure requires a court to evaluate the record to determine whether the parties have discovered specific facts sufficient to

create a genuine issue for trial. "The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). *See also Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence."). Because the affidavit is not admissible, the Court cannot consider the averments contained therein. *Cameron v. Wall*, 2010 WL 4878705, *4 (S.D. Miss. 2010). *See also Benoit v. Bates*, 2010 WL 4637672, *3 (S.D. Miss. 2010) (inadmissible hearsay cannot be used to create a genuine issue of material fact).

For both reasons, procedural and substantive, Theodis Freeman's affidavit provides no refuge for Hubbard. Without it, she is unable to demonstrate that she was replaced or treated less favorably than non-disabled employees and, therefore, she has not made out a *prima facie* case of discrimination under the ADA.

For that reason, Yazoo City's Motion for Summary Judgment [Docket No. 20] is granted. On this day, the Court will enter a Final Judgment reflecting this decision.

SO ORDERED this Eleventh day of July 2011.

          /s/ *Carlton W. Reeves*
          Hon. Carlton W. Reeves
          United States District Court Judge